## No. 2567. SMITH v. KEMP.

PER CURIAM.

The trial court having entered findings of fact and conclusions of law, a copy of which is appended hereto and incorporated herein, which findings and conclusions adequately explain the decision of the trial court entered in accord with *Smith v. Zant,* 250 Ga. 645 (301 SE2d 32) (1983), the Application for Certificate of Probable Cause and the Motion for Stay of Execution are denied.

*All the Justices concur.*

DECIDED AUGUST 16, 1983.

*Robert C. Glustrom, Jack Greenberg, James M. Nabrit III, John Charles Boger, Steven L. Winter, Anthony G. Amsterdam,* for appellant.

*Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.

## IN THE SUPERIOR COURT OF BUTTS COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| JOHN ELDON SMITH, | : | |
| Petitioner, | | CASE NO. 5588 : |
| v. | : | |
| | : | HABEAS CORPUS |
| WALTER D. ZANT, | : | |
| WARDEN, GEORGIA | | |
| DIAGNOSTIC | | |
| AND CLASSIFICATION | | |
| CENTER, | : | |
| Respondent. | | : |

### ORDER

In its decision rendered on March 1, 1983, the Supreme Court of Georgia remanded the above-styled matter to this Court for an evidentiary hearing on the merits of Petitioner's *"Napue-Giglio"* claim. *Smith v. Zant,* 250 Ga. 645, 652, 301 S. E. 2d 32 (1983). The basis of Petitioner's *Napue-Giglio* claim, as stated by the Supreme Court, was whether the state made an agreement with accomplice John Maree in exchange for his testimony against Petitioner at Petitioner's trial, which should have been disclosed to the trial jury. *Id.* at 649-650.

Pursuant to the ruling of the Supreme Court of Georgia, this

Court conducted extensive evidentiary hearings on the merits of this issue. Having considered all of the testimony presented at both of these hearings, observed the documentary evidence introduced by both parties, after hearing and considering arguments by counsel, and having reviewed applicable legal authority addressing similar issues, this Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

Petitioner John Eldon Smith was tried in the Superior Court of Bibb County on two counts of murder in January of 1975. At Petitioner's trial, accomplice John Maree, who had also been indicted for the same two murders as Petitioner, testified as a witness on behalf of the state and implicated Petitioner in the crimes.

As was noted by the Supreme Court of Georgia, certain questions were asked of accomplice John Maree on cross-examination during the Petitioner's trial. That portion of the Petitioner's trial transcript reflecting the cross-examination of Maree on relevant matters was introduced as Petitioner's Exhibit No. 6 during the May 10, 1983 evidentiary hearing held in this Court. The relevant portion of Maree's testimony is cited by the Supreme Court of Georgia in its decision in *Smith v. Zant, supra* at 649. As the Supreme Court of Georgia noted, "thus at trial it appeared that Maree had no agreement with the State in exchange for his testimony except protection for his family and himself because of 'threats'." *Id.*

Further, as noted by the Supreme Court of Georgia, then District Attorney Fred Hasty stated in his closing argument to the jury that there had been no promise to John Maree in exchange for his testimony, except protection of Maree's family. *Id.* at 649-650. The transcript of Mr. Hasty's closing argument was introduced as Petitioner's Exhibit No. 10 during the first evidentiary hearing held in this Court and constitutes pages 652-670 of Petitioner's trial transcript. As noted by the Supreme Court of Georgia, Mr. Hasty specifically referred to the testimony of John Maree during the trial and stated "you heard his [Maree's] testimony that he was promised protection for his family. Of course, you have to understand in his testimony that he is hoping he is going to save himself from the electric chair. It is the human reaction. It is natural for him to hope that what he told you and I can tell you, there has been no promise." (Petitioner's Exhibit No. 10, trial transcript p. 669).

Mr. Maree testified before this Court and stated that he [Maree] and John Smith arrived in Bibb County on November 6, 1974. November 7, 1974, Maree gave then Chief Deputy Ray Wilkes a

confession concerning the case. (HT. II, p. 11).[1] After having made his confession, Maree testified that the following occurred with reference to the question of any agreement between himself and the state in exchange for his testimony against Petitioner. Maree stated:

There wasn't really even time to think about anything like that. So, I knew that a statement like that could be used against me in any way, and I had no expectations of anything at all as far as that goes at that time.
(HT. II, p. 11).[2]

Further, Mr. Maree stated the following with specific reference to any conversations he had with then District Attorney Fred Hasty concerning his willingness to testify against the Petitioner, who was tried prior to the trial of co-defendant Rebecca Smith Machetti who had been indicted on the same two murders:

A. At the first trial, there was no question about testifying. I didn't have any real conversations regarding any kind of a deal whatsoever. Nothing came up on that until midway between the two trials; and, at that time, I stated that I wanted to go to trial myself. And Mr. Hasty stated that if I went to trial that he would have to step down from the case and turn it over to one of his assistants and they would go for the death penalty.

Q. When you speak of the two trials, do you have reference to the trial of John Eldon Smith, and then, Rebecca Smith Machetti?

A. That is correct.

Q. What, if any, discussions did you have with Fred Hasty in which he promised you that you would receive a life sentence if you would testify against John Eldon Smith?

A. There wan't any discussion to my knowledge, toward this kind of a situation at all.
(HT. II, p. 10).

Respondent's Exhibit No. 1 introduced at the second evidentiary hearing held in this Court consisted of a one page letter

---

[1] References to the Transcript of the May 10, 1983 hearing before this Court will hereinafter be referred to by "HT," followed by the appropriate page number. References to the June 10, 1983 hearing transcript will be designated by "HT II," followed by the appropriate page number.

[2] This Court has employed the unusual procedure of quoting extensively from the transcripts of the evidentiary hearings in this Court for the reason that the actual discussions held between various witnesses testifying at these evidentiary hearings is of material importance to the resolution of the issue which was the basis for the remand of the Supreme Court of Georgia.

which Maree testified that he wrote between the trials of John Eldon Smith and Rebecca Smith Machetti to then District Attorney Fred Hasty, to be used by Hasty in his preparation of the case against Ms. Smith Machetti. The last paragraph of the document which Mr. Maree identified as having been written by him states that, "since you can't tell me what you have in mind in my own case, I have to assume the worst . . . you have the case, what are you going to do with me?" (HT. II, p. 18, Respondent's Exhibit No. 1).

Mr. Willis B. Sparks, III represented John Maree on the murder charges brought against him in the Superior Court of Bibb County in 1974. (HT. 47-48). At the time that Mr. Sparks was appointed to represent John Maree, Maree had already given a very detailed confession and the cases of all three co-defendants were pending. (HT. 48-49). Mr. Sparks stated that early in his representation of Mr. Maree, then Assistant District Attorney Don Thompson, approached Mr. Sparks in an attempt to secure the testimony of Mr. Maree to testify for the state in the trials of John Eldon Smith and Rebecca Smith Machetti. (HT. 50). Mr. Sparks stated that he had a conference with Mr. Hasty, during which Mr. Thompson might also have been present, in which Mr. Sparks pointedly asked District Attorney Hasty "what was in it" for John Maree if he acted as a state's witness. (HT. 50). Mr. Sparks stated that the following discussion occurred:

And Mr. Hasty's response was that he would not make any agreement with a co-defendant prior to trial, that he had never done that in any case. Mr. Jack Gautea (sic) who had been the district attorney before him would not follow that policy, that it was considered an improper way to do things, and if John Morray (sic) wanted to testify as a state's witness, he might do so. But, he would do so without any promise. So, it was left with me to advise Morray (sic) of what he should do next. Mr. Hasty did say next, as I recall, that if Mr. Morray (sic) did not cooperate, it was quite possible that he would be the first man tried and the state might well seek the death penalty. But, he declined to give me any hint whatsoever as to what sort of sentence he might obtain if in fact he did testify for the state. (HT. 50).

Mr. Sparks stated that none of the subsequent discussions that he had with District Attorney Hasty on Mr. Maree's behalf altered the understanding between the State and Mr. Maree. Mr. Sparks stated that Mr. Hasty was "steadfast" in that ". . . he would not make a deal in advance with a co-defendant." (HT. 51).

With respect to what Mr. Sparks told his client, Mr. Sparks stated that he could not recall precisely the nature of the discussions

that he had with Mr. Maree, but that:

> ... I conveyed to Mr. Morray (sic) that he did not have a deal with the state, but that I thought his best and wisest course purely from the point of his self-interest was to testify for the state. His alternative was to go to trial on a case where he had already confessed a voluminous confession, where his palm print was found on the car and there was some chance the state would get the death penalty even though he did not appear to be the trigger man. Mr. Morray's (sic) attitude was a little bit strange at first. He showed almost no interest in the outcome of the case as to him at all. He professed to be in love with Mrs. Machetti's daughter. I forget which one. And for that reason and because he thought Mrs. Machetti would murder that daughter if she ever got out, he determined he did wish to testify for the state. A little later on in my representation of him, he became more interested in his own welfare and began to complain rather bitterly that he didn't have any deal worked out.

(HT. 51-52).

Introduced as Respondent's Exhibit No. 2 at the first evidentiary hearing in this case, was a photographic copy of an article from the Macon Telegraph dated March 2, 1975, in which Mr. Sparks was quoted as saying that, "I am hopeful in view of Maree's cooperation that he might get a life sentence, but there has been no commitments from the District Attorney and the Court has the final say so." (HT. 57-58). Mr. Sparks stated that he had an independent recollection of having made that statement and that that was in fact the situation at the time Mr. Maree testified at Petitioner's trial. (HT. 58).

Fred Hasty, who was the district attorney in the Macon Judicial Circuit in 1974, testified before this Court that he never promised Maree anything in exchange for his testimony against petitioner. (HT., p. 76). Mr. Hasty also stated that no one in his office made any promises to Mr. Maree, to his knowledge. (HT. 76-77). Mr. Hasty stated that he knew what his recommendation would be if Mr. Maree testified, but that because of his policy, he did not discuss the matter with Mr. Sparks. (HT. 77). After Mr. Maree testified at the trial of the Petitioner and Rebecca Smith Machetti, Mr. Maree pled guilty and the state and the defense made a joint recommendation for concurrent life sentences in Mr. Maree's case. (HT. 78).

In response to cross-examination by Petitioner's attorney, Mr. Hasty stated that if Mr. Maree had not testified he would have tried his strongest case first, so if Maree had not agreed to testify, Maree would have been tried first, "if I had to try him." (HT. 110). Mr. Hasty stated that he had no independent recollection of telling Mr. Sparks

that Maree would be tried first if he did not give his testimony because it was his strongest case. When asked by Petitioner's attorney whether Mr. Hasty would leave open the question of whether Maree would be tried or permitted to plead guilty if Maree testified for the state, Mr. Hasty replied, "I did not tell Mr. Sparks what I intended to do." (HT. 111).

The Supreme Court of Georgia directed that an evidentiary hearing to be held on the merits of this particular issue because the Court found that if the assertions set forth in an affidavit executed by former District Attorney Fred Hasty in May of 1982 were true, the facts presented "a serious constitutional issue of prosecutorial misconduct." *Smith v. Zant,* at 650. Therefore, the truth or falsity of the matters stated in the May 25, 1982 affidavit from former District Attorney Fred Hasty, were the subject of extensive testimony before this Court.

Essentially, Mr. Hasty testified before this Court that he was contacted by attorney Millard C. Farmer, on behalf of the attorneys representing John Eldon Smith, concerning the giving of an affidavit with reference to any agreement between the state and witness John Maree in exchange for his testimony against the Petitioner. This affidavit of Fred Hasty, dated May 25, 1982, had already been submitted at the prior hearing on the issue of waiver and was resubmitted by Petitioner's attorney as Petitioner's Exhibit No. 3 at the first evidentiary hearing before this Court. (HT. 22). Mr. Hasty's explanation for the discrepancy between the statements which he made to the jury in closing argument and the statement which he made in the affidavit which he signed on May 25, 1982, was as follows:

Promises made — I think that I testified on direct that my mind — what I had intended to do and what I actually did over a period of time and the two trials had become merged in my mind, and at one time I had thought I had. But, I have gone back and having time to refresh my memory by looking at the record and having plenty of time to think through and trying to recall things that happened at this point, I know that I did not make any sort of promise to Mr. Morray (sic). I know that when I told the jury that no promises had been made that I was telling them the absolute truth because I have never misled a jury. I know that if I had sat there and heard John Morray (sic) tell something that was not true, I know that I would — I did not have him on direct examination, and I know that Don Thompson was working for me and I would have had Don Thompson straighten that out. (HT. 87).

Mr. Hasty stated that if his memory had been refreshed as to what he had stated at the trial and as to John Maree's testimony at

Petitioner's trial, he would have never given the affidavit. (HT. 85). Mr. Hasty further stated that at no time was he shown any documents from Petitioner's trial which would conflict with what he was stating in the affidavit that he gave on May 25, 1982. (HT. 85). Mr Hasty stated that he had not reviewed Petitioner's file at the time he made his affidavit and that he thought he was making a true statement when he signed the affidavit. (HT. 100-101). Concerning similar inconsistent statements relating to promises made to Maree given at a deposition taken with respect to Rebecca Machetti's habeas corpus action, Mr. Hasty stated that at the time he made the statements he thought that the statements were true, but after reviewing the file and the trial transcript, he knows that these statements given in the deposition were untrue. (HT. 93).

Ray Wilkes testified at the hearing before this court on June 13, 1983, and stated that at the time of Petitioner's trial in the Superior Court of Bibb County, he was the Chief Deputy for Bibb County and was involved in the investigation of the two murders with which Petitioner was charged. (HT., p. 2, 140). Sheriff Wilkes stated that he took a statement from John Maree, but made no promises to Mr. Maree with regard to the disposition of his case prior to Mr. Maree making this statement. (HT. 140). Additionally, Sheriff Wilkes stated that he was present during numerous discussions with John Maree but that no promises were made to Maree during any of these discussions. (HT. II, 141).

## CONCLUSION

This Court concludes that the transcript of Petitioner's trial accurately reflects the fact that state's witness Maree had made no agreement with the state in exchange for his testimony against the Petitioner, except protection for his family and himself because of threats. This Court concludes that at the time Petitioner testified at the trial of John Eldon Smith, who was tried first for the murders of Ronnie and Juanita Akins, Mr. Maree agreed to testify in light of the fact that he had given an extensive confession to the authorities admitting his participation in the crimes and partially due to the fact that he was in love with the daughter of Petitioner's wife and co-defendant, Rebecca Smith Machetti, and was afraid that if Mrs. Machetti was not convicted, she would do harm to her daughter. It was not the policy of the district attorney of Bibb County to make agreement with co-defendants prior to their testifying as state's witnesses. Although District Attorney Hasty had it in mind to recommend life sentences for Mr. Maree should he testify at both the trials of the Petitioner and Rebecca Smith Machetti, he never informed Mr. Sparks, who was representing Mr. Maree, or Mr.

Maree, of his intention to make this disposition of the case. Prior to the time that Mr. Maree testified at Petitioner's trial, he had no expectation of the manner in which his case would be disposed. After the trial of Becky Machetti had begun, Mr. Maree stated that he wanted to go to trial himself and attempted to work out some agreement between himself and the state. However, no such agreement was reached prior to the time that Maree testified at the trial of Rebecca Smith Machetti.

Mr. Maree's attorney, Willis Sparks, had advised Petitioner that it would be in his best interest to testify for the state, as he had already given a voluminous confession and as there was a possibility that the state would seek the death penalty, even though the evidence did not seem to indicate that Mr. Maree was the trigger man in the murders. It was based on this advice and Mr. Maree's feelings for Rebecca Smith Machetti's daughter that Mr. Maree testified at Petitioner's trial.

This Court has carefully reviewed the extensive evidence in the case, including both the testimony given at the evidentiary hearings and the documentary evidence presented to this Court, and finds as a matter of fact that there was no undisclosed agreement between the state and state's witness John Maree made to obtain Mr. Maree's testimony against the Petitioner. Petitioner has failed to present evidence to this Court which would establish that the testimony of Mr. Maree given at Petitioner's trial was in fact false and known to be false by the prosecution so as to establish a constitutional violation in light of *Giglio v. United States,* 405 U. S. 150 (1972) or *Napue v. Illinois,* 360 U. S. 264 (1958). Therefore, this Court concludes that Petitioner was not deprived of his right to a fair trial under due process principles.

This Court denies this petition for a writ of habeas corpus and dissolves any state of execution ordered by this Court.

SO ORDERED, This the ___5___ day of ___August___, 1983.

SAM L. WHITMIRE
JUDGE, SUPERIOR COURT
FLINT JUDICIAL CIRCUIT